**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cr-00177-DGK |
| | ) | |
| | ) | |
| CHRISTOPHER W. McGOWEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART GOVERNMENT'S MOTION IN LIMINE**

The Government charges Defendant Charles E. Smith, Jr., a member of the Pagan's Outlaw Motorcycle Gang, with committing a number of violent crimes in aid of racketeering (VICAR) under 18 U.S.C. § 1959. Count III of the indictment charges Defendant with assault with a dangerous weapon in aid of racketeering, and Count IV charges Defendant with discharge of a firearm during and in relation to a crime of violence. ECF Nos. 1, 1-4.

Now before the Court is the Government's motion in limine to prohibit Defendant from claiming self-defense. ECF No. 404. The Government also asks the Court to instruct the jury that self-defense is unavailable to the defendants in this case. For the reasons given below, the motion is GRANTED IN PART.

**Legal Standard**

A district court may require a defendant "to provide a pre-trial proffer on the issue of self-defense," and the defendant must "provide[] more than a mere scintilla of evidence" in doing so. *United States v. Davidson*, 108 F.4th 706, 710 (8th Cir. 2024). "Though the burden of production is not a heavy one, when the defendant's evidence, even viewed in the light most favorable to him,

is insufficient to sustain an instruction of self-defense even if believed, the trial court and jury need not be burdened with testimony supporting . . . the defense." *Id.* (cleaned up).

The predicate VICAR offense of Count III is second-degree assault under Mo. Rev. Stat. § 565.052.1(2). Accordingly, Missouri substantive self-defense law applies. *See United States v. Mallory*, 104 F.4th 15, 18 (8th Cir. 2024) ("When [a VICAR predicate offense comes from state law], state law defines its parameters, including potential defenses."). Under Missouri law, "A person may . . . use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person." Mo. Rev. Stat. § 563.031.1. A person may only use deadly force (such as gunfire) in self-defense if the person "reasonably believes that such deadly force is necessary to protect himself . . . or another against death, serious physical injury, or any forcible felony." § 563.031.2(1). The "initial aggressor," *i.e.*, "one who first attacks or threatens to attack another," *State v. Hill*, 697 S.W.3d 885, 889 (Mo. Ct. App. 2024), may not use force in self-defense. § 563.031.1(1). "A person does not have a duty to retreat if the person is in any . . . location such person has the right to be." § 563.031.3(3).

**Background**

The Court views the evidence in the light most favorable to Defendant. *Davidson*, 108 F.4th at 710. Dewey Diggs is a member of an outlaw motorcycle gang, the Bandidos, that is a rival to the Pagan's. On September 17, 2022, Diggs was riding his motorcycle eastbound on US 40 Highway in Blue Springs, Missouri, displaying Bandidos insignia. Defendant, along with other Pagan's members, chased Diggs on the highway for over a mile. Eventually Diggs stopped on the side of the highway, and so did the Pagan's. Diggs was armed with a firearm when the Pagan's

confronted him on the side of the road. Diggs said to them, "We don't have to do this. You stay in your lane, I'll stay in my lane, we could give a crap what you guys do, we don't have to do this." One of the Pagan's replied, "Yes, we do." A Pagan's member or members fired at Diggs, striking him twice, and then Diggs returned fire. All told, thirteen Pagan's fired at Diggs, hitting him seven times. Diggs' return fire struck several Pagan's.

The Government argues Defendant cannot meet even his low burden of production to justify a self-defense instruction, because (1) the Pagan's were the initial aggressors in the altercation with Diggs; (2) Diggs' use of force was not imminent when Defendant chased and shot him; and (3) Diggs' use of force was not unlawful. Defendant argues he was not an initial aggressor and that Diggs' use of force was imminent.

**Discussion**

As a preliminary matter, Defendant offers no evidence that Diggs threatened imminent physical harm to any Pagan's member before the Pagan's fired on him. Nor does he contest that the Pagan's fired at Diggs before Diggs fired at them. There is evidence in the record that Defendant told a Blue Springs police officer that he shot back at Diggs in self-defense, *see* ECF No. 404 at 16, but in his briefing of this motion, Defendant does not explicitly contest that he fired at Diggs before Diggs fired back. He only raises doubts as to whether it was his bullets that struck Diggs before Diggs fired back. *See* D.'s Suggs. in Opp. at 4, ECF No. 416 ("Mr. Smith did not shoot D[ewey] D[iggs] before D[ewey] D[iggs] raised his weapon. Arguably, D[ewey] D[iggs] was struck by projectiles from John Hahn's weapon, but he was not struck by bullets from Mr. Smith before D[ewey] D[iggs] began shooting."). In any event, viewing the evidence in the light most favorable to Defendant, the Court does not assume that Defendant fired before Diggs fired.

It does assume, however, that a Pagan's member or members fired at Diggs and hit him before Diggs used or threatened the use of physical force against any Pagan's member.

That said, Defendant may not claim self-defense, because Diggs' use of force was lawful. And Defendant does not argue otherwise. Missouri's self-defense statute only allows the use of force to protect oneself against "what [a person] reasonably believes to be the use or imminent use of unlawful force." § 563.031.1. And Missouri imposes no duty to retreat upon persons who are in a place where they have a right to be. § 563.031.3(3).

Assuming, for the sake of argument, that the Pagan's' pursuit and confrontation of Diggs do not themselves preclude a claim of self-defense, Defendant does not claim that Diggs had no right to be on the side of US 40 Highway, where the altercation occurred, with his gun drawn. Nor could he, based upon the evidence. US 40 Highway is a public thoroughfare, and Diggs had as much right to be there as the Pagan's members, including Defendant. Moreover, Defendant offers no evidence that Diggs unlawfully exhibited his gun when he stopped and was confronted by the Pagan's. *See* Mo. Rev. Stat. § 571.030.1(4) ("A person commits the offense of unlawful use of weapons . . . if he or she knowingly exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner."). He only claims that Diggs had his weapon drawn when Defendant "arrived on the scene." D.'s Suggs. in Opp. at 4. And Defendant concedes that Pagan's members fired—and struck—Diggs before Diggs fired on them.

Accordingly, Diggs' use of deadly force was lawful. He had no duty to retreat, and he fired in self-defense under Mo. Rev. Stat. § 563.031.2. And even if Defendant fired on Diggs only after Diggs fired back at the Pagan's—though Defendant does not unambiguously assert this—this makes no difference. Defendant does not claim that Diggs fired at him, and he cannot claim

defense of others (the other Pagan's), because Diggs' use of deadly force against the other Pagan's, who fired at him first, was lawful self-defense.[1]

It is likely that Defendant's acts of chasing and confronting Diggs constitute "threat[s] to attack another," and Defendant is therefore the first aggressor and unable to assert self-defense. *Hill*, 697 S.W.3d at 889; § 563.031.1(1). But the Court does not need to make that determination, because Diggs' use of deadly force was lawful. Therefore, crediting Defendant's characterization of the evidence as true, his evidence is insufficient to sustain an instruction of self-defense.

**Conclusion**

For the reasons given above, the Government's motion is GRANTED IN PART. Defendant may not argue self-defense at any point during trial. As to any jury instructions on the unavailability of self-defense, the Court will take the issue under advisement and will rule on it at the appropriate time.

**IT IS SO ORDERED.**

Date: October 2, 2026

/s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

[1] Additionally, it would be unreasonable for Defendant to claim he "reasonably believed" Diggs' use of force was unlawful. Mo. Rev. Stat. § 563.031.1. Defendant tried to invoke self-defense at the scene of the shooting, and tries to invoke it here, because—viewing the evidence in Defendant's favor—he shot Diggs in response to Diggs firing his own weapon. But that is why self-defense applies to Diggs and makes his use of force lawful: he shot at the Pagan's only after they began shooting at him.
.