**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cr-00177-DGK |
| | ) | |
| | ) | |
| CHRISTOPHER W. McGOWEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER ON MOTIONS IN LIMINE</u>**

The Government charges Defendant Charles E. Smith, Jr. ("Smith"), a member of the Pagan's Motorcycle Club ("the Pagan's"), with committing violent crimes in aid of racketeering (VICAR) under 18 U.S.C. § 1959. Count II of the indictment charges Smith with attempted assault with a dangerous weapon in aid of racketeering, Count III charges Smith with assault with a dangerous weapon in aid of racketeering, and Count IV charges Smith with discharge of a firearm during and in relation to a crime of violence. ECF Nos. 1, 1-4. Count II of the indictment also charges Defendant John T. Fisher ("Fisher"), a member of the Pagan's, with attempt to commit assault with a dangerous weapon in aid of racketeering. ECF Nos. 1, 1-5.

Now before the Court are Fisher's motions in limine. ECF Nos. 454, 455, and 481. Smith has adopted and joined ECF Nos. 454 and 455. ECF No. 464.

**Legal Standard**

"[A] district court has broad discretion when ruling on motions in limine." *Weigel v. City of Flandreau*, No. 4:23-CV-04184-ECS, 2025 WL 2712278, at *1 (D.S.D. Sept. 23, 2025). "[R]ulings in limine are not etched in stone but are in their very nature preliminary. . . . If the evidence changes the basis for the ruling, or even if the judge is simply convinced that his ruling

in limine is erroneous, he retains the authority to change it." *United States v. Spotted Horse*, 916 F.3d 686, 693 (8th Cir. 2019). The Eighth Circuit reviews a district court's rulings on motions in limine for abuse of discretion. *United States v. Ellison*, 616 F.3d 829, 832 (8th Cir. 2010).

**Background**

The Government alleges the Pagan's is "a violent criminal organization whose members and associates engage in criminal activities such as drug trafficking, robbery, extortion, assault, and attempted murder in the Western District of Missouri and elsewhere." Indictment ¶ 2, ECF No. 1 at 4. According to the Government, the Pagan's use violence and intimidation to "preserv[e] and protect[] the power, territory, reputation, and profits" of their criminal enterprise; provide financial support and assistance to Pagan's members who have committed crimes on behalf of the enterprise, including those incarcerated; and obstruct law enforcement efforts to identify and prosecute Pagan's members who have committed crimes on behalf of the enterprise. *Id.* ¶ 12.

Fisher and Smith are charged with attempting to assault a rival motorcycle club member with a dangerous weapon in Topeka, Kansas, on or about September 3, 2022, "for the purpose of gaining entrance to and maintaining and increasing position in the Pagan's, an enterprise engaged in racketeering activity." *Id.* ¶ 18. Smith's assault and firearm-discharge charges arise from a shoot-out with a rival motorcycle club member on September 17, 2022, on the side of US 40 Highway in Blue Springs, Missouri.

Defendants seek to preclude use of the word "gang" and associated terminology to describe the Pagan's and to exclude evidence of Fisher's drug use or distribution and limit evidence of others' drug activity to what is necessary for the Government to carry its burden of proof regarding drug trafficking. ECF No. 454. Defendants also seek to exclude or limit the testimony of the Government's proposed motorcycle club expert, Mr. Edwin Torres. ECF No. 455. Finally, Fisher

seeks to exclude the other-acts evidence identified in the Government's Rule 404(b) notice, ECF No. 434. ECF No. 481.

## Discussion

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is low." *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. The rule "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981).

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2).

### I. Gang-related Evidence

"A defendant cannot be convicted because of his association with a group." *United States v. Parker*, 871 F.3d 590, 598 (8th Cir. 2017) (cleaned up). "General evidence as to gang culture, aimed at simply establishing a violent or lawless culture, is often unduly prejudicial and can be

irrelevant." *United States v. Payne-Owens*, 845 F.3d 868, 873 (8th Cir. 2017) (modification omitted). "[E]xtensive, prejudicial testimony concerning the violent tendencies and criminal dispositions of gangs in general and of [a local gang] in particular" can be excluded when such "gang reputation evidence ha[s] no discernible connection to the . . . charges" a defendant faces. *United States v. Street*, 548 F.3d 618, 631–32 (8th Cir. 2008); *see also United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir.1991) (excluding general evidence of a motorcycle gang's "institutional criminality" because it "deflects the jury's attention from the immediate charges and causes it to prejudge a person with a disreputable past, thereby denying that person a fair opportunity to defend against the offense that is charged.").

But gang-related evidence that is "intrinsic" to the charged crime—that is, evidence that "contribute[s] to the narrative of the story and provide[s] context for the charged crime," *Payne-Owens*, 845 F.3d at 872 (citation omitted)—can be admitted as highly probative. Such evidence can "tend[] to make the government's theory . . . more probable." *United States v. Looking Cloud*, 419 F.3d 781, 786 (8th Cir. 2005) (holding that the charged crime "could only be explained within the context of the [group] and its activities," *id.* at 786). "[G]ang-related testimony . . . that sp[eaks] to the key issue at trial" has significant probative value and is therefore often admissible. *Id.* at 874. That is because, when "the primary effect of the gang-related evidence [is] not to prove guilt by association, but to provide context to disputed issues, the danger of unfair prejudice d[oes] not substantially outweigh its probative value." *United States v. Dat*, 181 F.4th 848, 872–73 (8th Cir. 2026); *see* Fed. R. Evid. 403. And "[the Eighth Circuit has] admitted evidence of a defendant's association with a group where the association establishes motive or opportunity to commit the crime." *Parker*, 871 F.3d at 598; *see* Fed. R. Evid. 404(b)(2).

When charges include racketeering, the Government must prove the existence of an "enterprise," that is, for the Pagan's here, a "group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C.A. § 1959(b)(2). To do so, the Government must prove the Pagan's have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). That means the Government may—because it often must—introduce gang-related evidence that goes beyond the charged conduct. *See United States v. Keltner*, 147 F.3d 662, 668 (8th Cir. 1998) (holding that the government may prove the existence of an enterprise in the racketeering context "by introducing evidence not connected with the charges in the indictment provided the prejudicial aspects of the evidence do not outweigh its probative value.").

The Court addresses Defendants' objections to gang-related evidence, which they make in ECF Nos. 454 and 455, together, because the issues overlap and depend upon the same legal standards. Defendants object to the use of the terms "gang," "outlaw motorcycle gang," or "OMG" to refer to the Pagan's, because these terms are not elements of the charged conduct and invite the jury to convict on an improper basis (*i.e.*, "guilt by association"). Defendants also seek to exclude the Government's proposed motorcycle club expert because his report focuses on "general gang violence," is unhelpful to the jury, and is unfairly prejudicial. Alternatively, Defendants seek to limit the expert's testimony to information about the Pagan's chapter structure and hierarchy in Missouri and Kansas and request a hearing outside the presence of the jury before Mr. Torres testifies where the Government must establish the admissibility of each expert opinion it intends to offer. Defendants do not challenge Mr. Torres' qualifications as an expert.

**a. The Government and its expert shall not refer to the Pagan's as a "gang," "outlaw motorcycle gang," or "OMG."**

It is improper for a jury to convict based upon gang affiliation alone. *Roark*, 924 F.2d at 1432, 1434 (remanding for new trial because government's "relentless attempt to convict Appellant through his association with the motorcycle club" was unfairly prejudicial). Use of the terms "gang," "outlaw motorcycle gang," or "OMG" invites the jury to find "guilt by association" by making the kind of propensity inference—Defendants are "outlaw gang members," therefore criminals, therefore guilty in this case—that Rule 404(b)(1) forbids. The Government agrees to avoid the word "gang" when referring to the Pagan's. ECF No. 486 at 1, 2–3. The Government and its expert shall therefore identify the Pagan's with neutral terms like "the Pagan's," "the motorcycle club," "the enterprise," "the organization," or the like.

**b. Mr. Torres' motorcycle club expert testimony**

Expert testimony is admissible if it is likely to help the jury "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert may rely on facts or data that experts in the field reasonably rely on, even if they are not otherwise admissible. *Id.* 703. This includes hearsay. *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) ("[A]n expert . . . [is] entitled to rely on otherwise inadmissible hearsay in forming the basis of his opinion, so long as the hearsay is of the type reasonably relied upon by experts in his field."). But such evidence may be given to the jury "only if [its] probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." Fed. R. Evid. 703. An expert may not offer an opinion about whether a criminal defendant had the mental state required to satisfy the elements of the crime charged. *Id.* 704(b).

Defendants' arguments that Mr. Torres' testimony should be excluded entirely are unpersuasive. The evidence is admissible in part. The Court has examined Mr. Torres' report and first identifies aspects of it that are inadmissible and then discusses the aspects that are admissible.

**1. Inadmissible expert testimony**

The Eighth Circuit has found admission of the general history and violent tendencies of motorcycle clubs, exhaustive explanations of patches, initiation processes, views of women, and views of "snitches" (i.e., informants) to be reversible error when the evidence is not "tied to the actual crimes with which [a defendant] was charged or the particular facts of his case." *Street*, 548 F.3d at 629–31. Mr. Torres' report contains similar information. While the Court is aware of the Government's burden to prove enterprise, the Court excludes the following evidence as irrelevant to that burden, inadmissible propensity evidence, or unfairly prejudicial.

The Court excludes general, conclusory statements about the lawlessness of motorcycle clubs in general or the Pagan's in particular. Fed. R. Evid. 404(a)(1).

The Court excludes the general history of motorcycle club culture, including the 1947 "Hollister Riot," and the "Tiers of Motorcycle Clubs" (MCGO_00555943–00555944), because they are not probative of a consequential fact in this case. Fed. R. Evid. 401(b), 402.

The Court excludes the exhaustive description of patches (MCGO_00555946–00555948) under Rule 403, because the probative value of the patches' violent content or associations as a whole is substantially outweighed by the danger of unfair prejudice, namely, that the jury will convict based on association with the Pagan's because it perceives the Pagan's to be violent. That said, as explained more fully below, the Court will admit evidence of certain patches and of how and why Pagan's leadership awards patches to members as context for the racketeering element of the crimes charged in this case.

The Court excludes evidence of the role of women among the Pagan's ("Property of", MCGO_00555949). This evidence is not probative of any fact relevant to the charged conduct and is unfairly prejudicial.

The Court excludes the three acts of violence involving the Pagan's in Tennessee, New York, and Pennsylvania (MCGO_00555957) as unfairly prejudicial under Rule 403. These incidents do not involve Defendants and are not connected to the activities of the Missouri Pagan's. Nor are they probative of the enterprise element of the VICAR crimes charged. But their admission could invite the jury to convict on an improper "guilt-by-association" basis and are therefore unfairly prejudicial. The Court similarly excludes evidence from Pagan's activities in states other than Missouri and Kansas (MCGO_00555951–00555952) insofar as they do not involve the Pagan's chapter members indicted in this case.

**2. Admissible expert testimony**

Gang-related evidence that is "intrinsic" to the charged crime can be admitted as highly probative. When "the primary effect of the gang-related evidence [is] not to prove guilt by association, but to provide context to disputed issues, the danger of unfair prejudice d[oes] not substantially outweigh its probative value." *Dat*, 181 F.4th at 872–73; Fed. R. Evid. 403. And it is this context-providing function of expert testimony that helps a jury understand evidence and thus makes it admissible. *See United States v. Mallory*, 104 F.4th 15, 19 (8th Cir. 2024) (affirming expert testimony about how gangs form, act, and deal with one another because it was "helpful" to the jury in understanding the relationship between gangs and racketeering activity); *United States v. Gaines*, 859 F.3d 1128, 1132 (8th Cir. 2017) ("The expert informed the jury that Gaines's clothing and tattoos were indicative of gang membership, and we have repeatedly held explanatory evidence like this to be admissible."); *United States v. Sills*, 120 F.3d 917, 920 (8th Cir. 1997)

(affirming admission of expert testimony to aid the jury with the meaning of gang-related markings on a shotgun). Accordingly, the following evidence is admissible.

The Government must prove that the Pagan's are an enterprise by proving the Pagan's have a purpose, relationships among those associated with the enterprise, and longevity. *Boyle*, 556 U.S. at 946. Thus, the history of the Pagan's and evidence of its organization and enterprise activity is admissible to prove this element. The national history of the Pagan's (MCGO _00555945), its expansion (MCGO_00555954,) and establishment in Missouri (00555955) are admissible to show longevity and relationships. The Pagan's hierarchical structure (excluding the reference to women as "Property of"), the Pagan's' relationship to "support clubs," and the establishment of the Pagan's in Missouri are admissible to show relationships (MCGO_00555950–00555951, 005559545). Evidence of the Pagan's financial structure and communications network (MCGO_00555952–00555954) is admissible to show purpose and relationships. And the explanation of what "PAGAN'S," as an acronym, stands for (MCGO_00555948)[1] is admissible as the Pagan's own description of their organization.

While the Court excludes a comprehensive description of the patches worn by the Pagan's, the Court admits evidence of their significance as awards for conduct that furthers the interests of the enterprise and as status symbols. And, as explained below, the Court admits explanation of the specific patches awarded to two co-Defendants in this case for their roles in an assault on a rival motorcycle club member. Similarly, the general significance of the vests ("cuts") as markers of motorcycle club identity is admissible (MCGO_00555945), because it gives explanatory context to the encounter between the Pagan's and a rival Bandidos motorcycle club member on US 40 Highway at issue in this case.

[1] Professional – Assassin – Gallantry – Aggressive – Nasty – Shit we don't speak of.

While the Court excludes general, conclusory assertions about the Pagan's' violent conduct and evidence of altercations in other states, evidence of the Pagan's rivalry with the Bandidos (MCGO_00555955) is admissible, because it gives explanatory context to the US 40 Highway encounter, tends to make the Government's theory of the case more probable, and can show motive and opportunity for Smith's conduct. *See Looking Cloud*, 419 F.3d at 786; Fed R. Evid. 404(b)(2); *see also Parker*, 871 F.3d at 600 ("Evidence of the gang war directly related to the conspiracy's motivation and to [defendant]'s motivation to join it. The evidence of his association with the [gang] directly related to his participation in that conspiracy.").

Concerning Defendants' hearsay objection, Mr. Torres indicates that he regularly relies on informants and former and present Pagan's members for his information. MCGO_00555943. *See Sphere Drake Ins. PLC*, 226 F.3d at 955 (affirming admission of expert testimony where "[the expert] testified that he regularly relied on the statements of informants as an investigating officer"). And the Court has explained why the evidence's probative value in helping the jury is not substantially outweighed by its prejudicial effect.

Moving finally to Defendants' objection on mental-state determinations, Defendants argue Torres' report "indirectly" testifies "about whether the defendant did or did not have a mental state . . . that constitutes an element of the crime charged," because it explains, "[Pagan's] acts of violence often include assault, often with deadly weapons . . . . Pagan's members and associates maintain and enhance their status in the Pagan's enterprise by participating in such violent acts." Defendants argue this language "closely tracks the purpose element of" the attempted assault with dangerous weapon in aid of racketeering charge. While this may be true, the expert's statement is not an opinion about whether Fisher specifically had the requisite mental state of the charged crime. It is rather a general assertion about how Pagan's attain status in the organization. The

report says nothing about Fisher's status as a Pagan's member, nor does it say that all Pagan's members always maintain and enhance their status or that all Pagan's who do maintain and enhance their status always use assault with deadly weapons to do so. It says only that they "often" do. This does not violate Rule 704(b), even "indirectly."[2]

The Court denies Defendants' request for a pre-testimony hearing. The Court has explained what is and is not admissible in Mr. Torres' expert report and expects the Government to hew to the Court's holdings at trial. Defendants of course retain the right to object to Mr. Torres' testimony during trial if the Government exceeds the limits the Court sets in this order.

## II. Drug evidence

Fisher argues the Court should exclude evidence of Fisher's drug use and distribution and limit evidence of others' drug activity to what is required to prove the racketeering element of 18 U.S.C. §§ 1959(b)(1) and 1961(1) (*i.e.*, drug trafficking under 21 U.S.C. §§ 841 and 846).

---

[2] *See Diaz v. United States*, 602 U.S. 526, 535–36 (2024) ("Because Agent Flood did not give an opinion 'about whether' Diaz herself 'did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense,' his testimony did not violate Rule 704(b).

"Diaz's counterarguments . . . are not persuasive. Diaz . . . argue[s] that Agent Flood 'functional[ly]' stated an opinion about whether Diaz knowingly transported drugs when he opined that couriers generally transport drugs knowingly. That argument mistakenly conflates an opinion about *most* couriers with one about *all* couriers. . . . Take for example an expert who testifies at an arson trial that all people in the defendant's shoes set fires maliciously (the mental state required for common-law arson). Although the expert never spoke the defendant's name, the expert nonetheless violated Rule 704(b). That is because the expert concluded that the defendant was part of a group of people that all have a particular mental state. The phrase 'all people in the defendant's shoes' includes, of course, the defendant himself. So, when the expert testified that all people in the defendant's shoes always set fires with malicious intent, the expert also opined that the defendant had that mental state. The expert thus stated an opinion on the defendant's mental state, an ultimate issue reserved for the jury, in violation of Rule 704(b).

"Here, by contrast, Agent Flood asserted that Diaz was part of a group of persons that *may or may not* have a particular mental state. Of all drug couriers—a group that includes Diaz—he opined that the majority knowingly transport drugs. The jury was then left to decide: Is Diaz like the majority of couriers? Or, is Diaz one of the less-numerous-but-still-existent couriers who unwittingly transport drugs? The ultimate issue of Diaz's mental state was left to the jury's judgment. As a result, Agent Flood's testimony did not violate Rule 704(b)." (citation omitted) (emphasis in the original)).

Fisher's personal drug use is not an issue in this case and does not satisfy any of Rule 404(b)(2)'s permitted uses of other crimes, wrongs, or acts. The Government does not argue otherwise. ECF No. 486. Accordingly, the Court excludes evidence of his personal drug use.

His drug distribution, however, is a different matter. "Intrinsic evidence . . . tends logically to prove [an] element of the crime charged." *United States v. Buckner*, 868 F.3d 684, 688 (8th Cir. 2017). Fisher is charged with attempted assault in aid of racketeering. The racketeering activity in this case is drug trafficking. The Government does not, as Fisher states, simply allege that Fisher "attempt[ed] to assault a rival club member on September 3, 2022." ECF No. 454 at 7. It alleges that he did so "in aid of racketeering," that is, in aid of the Pagan's' enterprise drug trafficking. If the drug distribution of others is intrinsic to the crime charged and admissible to prove the racketeering element of the charged offense—and Fisher concedes it is—then so is that of Fisher, who is charged with the offense. Moreover, Fisher's personal involvement in drug distribution is "closely or inextricably intertwined with the charged crime." *United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (citation omitted). Proof of the Pagan's'—including Fisher's—drug distribution "provides the context in which the charged crime"—attempted assault in aid of enterprise racketeering/drug trafficking—"occurred." *Id.*

Accordingly, evidence of Fisher's and other Pagan's' drug distribution activity is admissible.[3]

## III. The Government's Rule 404(b) Notice

The Government has given notice that it intends to offer evidence of three episodes

---

[3] Fisher's reliance on *Roark* is misplaced. In *Roark*, the Eighth Circuit excluded evidence of a motorcycle club's drug activity in a club member's drug-offense trial, because the evidence was inadmissible propensity evidence offered in an attempt to prove guilt by association. *Roark*, 924 F.2d at 1434. Not so here. "In aid of racketeering/drug trafficking" is an element of the offense, and, as the Court has explained, Fisher's—like the other Pagan's'—drug trafficking is intrinsic evidence to the crime charged, because it provides context in which the crime allegedly occurred.

involving Pagan's co-Defendants' attacks against rival motorcycle clubs: (1) a May 30, 2022, assault of a rival Bandidos member; (2) an April 2023 confrontation and theft of a firearm from a rival Outlaws Motorcycle Gang member; and (3) a July 19, 2023, assault of a rival motorcycle club member. ECF No. 434. Fisher opposes the admission of the evidence. He also requests an instruction that evidence admitted against Smith concerning the September 17, 2022, assault along US 40 Highway may not be considered against Fisher. ECF No. 481.

The Government argues the three episodes, which did not involve either Fisher or Smith, are intrinsic to the charged conduct because they prove that (1) an enterprise existed and (2) a defendant could gain status in the enterprise through acts of violence, both of which are elements of VICAR crimes under 18 U.S.C. § 1959. And though "Rule 404(b) applies only to extrinsic evidence," *Buckner*, 868 F.3d at 688, the Government filed the Rule 404(b) notice identifying the episodes "out of an abundance of caution." Fisher argues the episodes are not intrinsic to his charge of attempted assault in aid of racketeering and do not satisfy Rule 404(b) in any case.

The episodes are admissible. As explained above, to satisfy its burden of proof, the Government must offer evidence that the Pagan's are an "enterprise," and it may do so "by introducing evidence not connected with the charges in the indictment provided the prejudicial aspects of the evidence do not outweigh its probative value." *Keltner*, 147 F.3d at 668. It must also offer evidence that Defendants committed violent acts to gain status in the Pagan's enterprise.

The episodes are intrinsic to the VICAR crimes charged in this case. "Intrinsic evidence . . . tends logically to prove [an] element of the crime charged." *Buckner*, 868 F.3d at 688. The episodes the Government offers tend logically to prove the elements noted above, namely, that the Pagan's are an enterprise and that individuals seek to attain status in that enterprise through acts of violence. As noted above, this proof includes the specific patches co-Defendants McGowen

and Hahn earned for their roles in the May 30, 2022, assault. The Government may admit evidence to explain the award and significance of these specific patches as context for the racketeering element.

The episodes also provide context to and help "complete the story" of the crimes charged. They are not simply general assertions about the violence and lawlessness of motorcycle clubs in general or the Pagan's in particular. Nor are they Pagan's episodes from other parts of the country with no or almost no connection to the Defendants in this case. They are episodes involving members of the Pagan's chapter to which the Defendants in this case belonged and provide context, not propensity evidence, for the crimes charged. They show factually similar confrontations between Pagan's who are co-Defendants in this case and rival motorcycle clubs that occurred over a series of months: May 2022, September 2022, April 2023, July 2023. This evidence provides context for the crimes charged.

Fisher's argument that the episodes are only inadmissible "general gang evidence" (i.e., the Pagan's "use violence to keep rivals in fear") is unavailing, and his citations of *Dat*, *Ellison*, and *Payne-Owens* are misplaced. None of these cases involved VICAR charges, so the government in those cases did not have to prove enterprise or violence-for-status elements, elements that may require evidence of gang activity that is broader than, and gives logical support and context to, the specific predicate acts of the charged conduct. *See Keltner*, 147 F.3d at 668.

Because the episodes are intrinsic to the VICAR charges, the Rule 404(b) analysis does not apply. Fisher's 404(b) argument fails in any case. He argues that the episodes cannot show his motive, intent, plan, or knowledge concerning his charged conduct because none of the episodes was his act. But Rule 404(b) is broader than that. Evidence of a defendant's association with a group can be admitted to establish motive or opportunity to commit a crime. *See Parker*, 871 F.3d

at 598. And, as explained above and contrary to Fisher's assertion to the contrary, the episodes are close in time and factually similar to the charged conduct in this case. *See United States v. Shelledy*, 961 F.3d 1014, 1022 (8th Cir. 2020) (Rule 404(b)(2) evidence admissible if it is " . . . relevant to a material issue [and] . . . similar in kind and not overly remote in time to the charged offense . . . ."). So, even if the evidence were not intrinsic, it is admissible to show motive and opportunity for Fisher to attempt to assault a rival motorcycle club member.

Turning to Rule 403, the intrinsic evidence is probative of the existence of an enterprise and of the use of violence to gain status in that enterprise, and the danger of prejudice does not substantially outweigh this probative value. *See United States v. Ellison*, 793 F.2d 942, 949 (8th Cir. 1986) (affirming district court's admission of evidence of criminal activities not charged in the indictment—*i.e.*, "that [white-supremacist group] members attempted to blow up a natural gas pipeline, attempted to burn a Jewish community center in Indiana, and stole jewelry from a pawn shop, as well as other evidence concerning the use and accumulation of firearms and explosives on [group] property"—to prove the existence of an enterprise, because "we cannot say that the prejudicial aspects of the disputed evidence outweigh its probative value.").

As to Fisher's request for an instruction that evidence admitted against Smith concerning the US 40 Highway assault may not be considered against Fisher, the Court comes to the same conclusion as it did for the three episodes discussed above. The evidence presented to prove the counts against Smith is admissible to prove the existence of a racketeering enterprise for the reasons explained above and can thus be considered against Fisher for that purpose.

**IT IS SO ORDERED.**

Date: October 18, 2026

/s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT